IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL INDICTMENT NO. |
| v. | ) | 01:18-CR-0149-ODE-RGV |
| | ) | |
| ADEWALE O. SONUBI | ) | |
| _____ | ) | |

<u>SENTENCING MEMORANDUM</u>

ADEWALE O. SONUBI, through counsel, submits this Sentencing Memorandum to assist the Court in its determination of a reasonable sentence that is sufficient but not greater than necessary to comply with the directives of 18 U.S.C. § 3553(a) and of *United States v. Booker*, 543 U.S. 20, 125 S. Ct. 738 (2005).

BACKGROUND

On February 14, 2019, Mr. Sonubi entered a non-negotiated plea of guilty to Counts One through Eight of the Indictment, admitting violation of 18 U.S.C. §§ 1344 and 18 U.S.C. §§ 1028A for his participation in a conspiracy to commit bank fraud (Doc 35). A pre-sentence report prepared for this case calculates the applicable guideline range as 45 to 51 months based on an offense level of 16 and a criminal history category of I. *See* Presentence Investigation Report ("PSR") at p.23, Part D, Sentencing Options. This range accounts for the 21-27 month range calculated for the bank fraud, and an additional 24-month consecutive term for the aggravated identity fraud counts. *Id*. Through counsel, Mr. Sonubi respectfully

requests a sentence of 36 months, which is a reasonable sentence under the sentencing factors of 18 U.S.C. § 3553(a).

## ARGUMENT AND CITATION OF AUTHORITY

I.   AFTER CALCULATION OF THE APPLICABLE GUIDELINE RANGE THE COURT MUST CONSIDER THE FACTORS OF SECTION 3553(A)TO ARRIVE AT A REASONABLE SENTENCE

The Sentencing Guidelines promulgated by the United States Sentencing Commission provide an advisory rather than a mandatory regime for determining sentences.   *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (citing *United States v. Booker*, 125 S. Ct. 738 (2005)).   The Sentencing Commission's guideline ranges are but generalizations.   *United States v. Hunt*, 459 F.3d 1180, 1184-85 (11th Cir. 2006).   The Court should consult the Guidelines, but the resulting range is but one factor that the Court must consider in arriving at a reasonable sentence.   *Crawford*, 407 F.3d at 1178-79.

In its consideration of the Section 3553(a) factors, the court may determine that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless.   *See* Rule 32(f).   Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

*Rita v. United States*, 127 S. Ct. 2456, 2465 (2007).

As *Rita* notes, guideline calculations expressly exclude consideration of certain offender characteristics.   *Rita*, 127 S. Ct. at 2465; *see also Hunt*, 459 F.3d at 1184 n.4.   And, as the Supreme Court articulated in *Gall v. United States*, 128 S. Ct. 586 (2007), extraordinary circumstances are not required to justify an outside of the guideline sentence.   *Gall*, 128 S. Ct. at 595.

Congress has mandated that the preliminary guidelines calculation be considered along with the other sentencing factors enumerated in Section 3553 of Title 18, a procedural requirement unaffected by *Booker* and its progeny.   *See* 18 U.S.C. § 3553(a); *Hunt*, 459 F.3d at 1184.   After calculation of the custody range, it is within the Court's discretion to sentence within that guideline, or to impose a more severe or more lenient sentence than the applicable range, "provided the resulting sentence is reasonable in light of the   3553(a) factors."   *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005); *see also Gall*, 128 S. Ct. at 595.

II.   A 36-Month Term of Imprisonment Is a Reasonable Sentence for a First Time Offender Like Mr. Sonubi

A.   Nature of the Offense

Mr. Sonubi is charged with conspiracy to commit bank fraud and aggravated identity fraud. (Doc 1.) The Presentence Report provides a detailed explanation of

3

the offense conduct. *See* PSR at ¶¶ 9-49. In summary, an acquaintance recruited Mr. Sonubi to participate in a scheme that involved opening business accounts at banks in order to deposit stolen checks. *See id*. & ¶ 50 (detailing proffer and attempted cooperation). The participants then withdrew funds from the account, often from ATMs, in an attempt to remove the money before investigators detected the fraud. *Id*

Mr. Sonubi started out by depositing a check, but soon after appeared in banks with fraudulent identification and business records to open accounts. *See, e.g., id.* at ¶¶ 11, 14. He also withdrew funds from the accounts, both at ATM's and through the purchase of money orders. *See, e.g., id.* at ¶ 21. A number of other individuals were involved, however, some of whom were also responsible for opening bank accounts, depositing funds, and making withdrawals. *See id*. at ¶¶ 10, 78 (other unknown individuals opening accounts); 15, 41-42 (other unknown individuals depositing checks); 23, 43 (other unknown individuals making withdrawals). As the PSR also notes, some of the accounts involved in the fraud have not been traced to Mr. Sonubi at all. *See id*. at ¶¶ 16-17, 78.

Two aspects of the fraud were outside of Mr. Sonubi's sphere of activity. First, Mr. Sonubi was not involved in the procurement of the stolen corporate checks, and has no knowledge of their source, other than the individual that he reported to law enforcement. *See* PSR at ¶ 50. It is not entirely clear where the checks were coming

from, but the source may have been located in Texas, as were other aspects of the fraud. *See id.* at ¶¶ 38 (source of funds in account were stolen checks from Dallas); 41-42 (deposits in Dallas, Texas); 11, 15, 20, 27, 32, 36 (fraudulent payees on checks with P.O. Boxes in Dallas).

Additionally, Mr. Sonubi played no role in the manufacturing of the identification documents, other than providing his photograph. *See id.* at ¶ 50. As Mr. Sonubi related in his debriefing, he was told by the acquaintance that got him involved in the fraud that an individual doing business on N. Druid Hills Road documents manufactured those documents. *Id.* That or a different individual matched the identification to the names on the incorporation documents. *Id.* Notably, agents searched Mr. Sonubi's home pursuant to warrant while he and his family were out of the country, and recovered identification documents related to the fraud, but not identification making equipment. *See id.* at ¶ 47 (search of home and automobile).

B.   This Court Must Impose a Two-Year Consecutive Sentence for Aggravated Identity Theft, But Is Not Required to Stack Those Counts

As the Presentence Report correctly notes, because Mr. Sonubi was convicted of four counts of violating 18 U.S.C. § 1028A by committing aggravated identity theft in the commission of the bank fraud, this Court must run a two-year sentence

consecutive to the sentence imposed for violation of Counts One through Four. *See* PSR at pp. 23-24 & Note A; 18 U.S.C. § 1028A (making it a crime to transfer, possess or use, without lawful authority, a means of identification of another person during and in relation to another felony offense). However, as Section 1028A makes clear, only one two-year consecutive count is required; the remaining counts may run concurrently:

> a term of imprisonment imposed on a person for a violation of this section may, in the discretion of the court, run concurrently, in whole or in part, only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section, provided that such discretion shall be exercised in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28.

18 U.S.C. § 1028A(b)(4). Through counsel, Mr. Sonubi respectfully contends that consideration of the facts of this case and the policy statements from the Commission support imposition of concurrent sentences after the first consecutive count.

In Section 5G1.2 of the Sentencing Guidelines, the Sentencing Commission provides guidance for the treatment of multiple conviction under Section 1028A. That provision provides a "non-exhaustive list" of three factors for this Court to consider:

> (i) The nature and seriousness of the underlying offenses. For example, the court should consider the appropriateness of imposing consecutive, or partially consecutive, terms of imprisonment for multiple counts of

18 U.S.C. § 1028A in a case in which an underlying offense for one of the 18 U.S.C. § 1028A offenses is a crime of violence or an offense enumerated in 18 U.S.C. § 2332b(g)(5)(B).

(ii) Whether the underlying offenses are groupable under § 3D1.2 (Groups of Closely Related Counts). Generally, multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2.

(iii) Whether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence for multiple counts of 18 U.S.C. § 1028A.

*See* U.S.S.G. § 5G1.2 Comm. appl. n. 2(B).

The first factor of application note 2(B) suggests a high bar to the imposition of multiple consecutive sentences. The first of the two examples in which multiple consecutive counts might be appropriate is a crime of violence, which is a decidedly atypical use for stolen identity information, and suggests a significantly more opprobrious set of facts than the bank fraud that is at the core of this case. *See id*. at n.2(B)(i). The second example is even further removed from the nature of Mr. Sonubi's crime: the cross-reference to Section 2332b is to enumerated offenses that support federal crimes of terrorism charges. *See id*. at n.2(B)(i) (citing 18 U.S.C. § 2332b(g)(5)(B) (enumerated offenses supporting terrorism charge, including, for example, offenses relating to destruction of aircraft or aircraft facilities, relating to violence at international airports, relating to arson within special maritime and

territorial jurisdiction, relating to biological or chemical weapons, relating to conspiracy to murder, kidnap, or maim persons abroad)).

The second factor of application note 2(B) asks whether the underlying offenses are groupable under Section 3D1.2 of the Guidelines. *See id.* at n.2(B)(ii). And Mr. Sonubi's fraud offenses are groupable under, at a minimum, Section 3D1.2(d), which specifically lists 2B1.1, the applicable guideline for the fraud.[1] *See* U.S.S.G. § 3D1.2(d) (noting when offense level is determined largely on basis of total amount of harm or loss, or if offense behavior is ongoing or continuance in nature, grouping rules apply). The second factor concludes that "[g]enerally, multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2" U.S.S.G. § 5G1.2 Comm. appl. n. 2(B)(ii).

The final factor points back to the sentencing factors of Section 3553(a)(2) of Title 18, asking the Court to consider whether those sentencing purposes are better achieved by a concurrent or consecutive sentence. *See id.* at appl. n. 2(B)(iii); 18 U.S.C. § 3553(a)(2) (court shall consider need for sentence imposed to reflect

---

[1]     The Presentence Report makes this finding in Paragraph 54, which states that "[p]ursuant to U.S.S.G. § 3D1.2(d), Counts One through Four ar grouped together since the offense is determined largely on the basis of the total amount of loss." PSR at ¶ 54.

seriousness of offense, just punishment, deterrence, to protect the public, and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner). Through counsel, Mr. Sonubi suggests that those purposes are adequately and reasonably advanced by running Count Five consecutively to the bank fraud charged in Counts One through Four, with the remaining Counts to run concurrently. Should the Court accept the sentencing recommendation, this would result in a three-year period of incarceration for a first time offender.

Other factors from Section 3553(a) also support making only one 1028A count consecutive, most notably, the need to avoid unwarranted sentencing disparities with other defendants who have received concurrent sentences in similar or more egregious cases. A few examples illustrate the ordinary operation of the statute, which, as Section 5G1.2, anticipates concurrent treatment of multiple 1028A counts in most instances.

For example, in the case of *United States v. Ford* the sole defendant was charged in a tax fraud scheme with ten counts of mail fraud in violation of 18 U.S.C. § 1341, and ten counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. *See United States v. Cora Cadia Ford*, Crim. Indict. No. 1:12-CR-297-TWT (N.D. Ga. 2012) (Doc. 1). The defendant targeted mentally handicapped,

physically disabled, and largely homeless victims, falsely claiming that she could provide them benefits from a government program as a ruse to get their social security numbers, which she instead used in fraudulent tax filings. *See id*. at ¶¶ 4-6.

A jury convicted the defendant of all counts at trial. *See id*. at Doc. 91. At sentencing, the Court determined a sentencing guidelines range of 87 to 108 months for the fraud. *See id*. at Doc. 120 at pp. 86-87. The ten aggravated identity theft counts, at two years carried a potential concurrent addition of 24 months, or consecutively, 240 months. *Id*. The Court imposed a sentence of 87 months for the fraud, 24 months for the first aggravated identity theft count, and ran the remaining aggravated identity theft counts concurrent to the other counts. *See id*. at Doc. 105. Although the conduct in *Ford* is arguably more opprobrious than the instant case because of the vulnerability of the victims, the case is not atypical in its treatment of multiple 1028A counts, which can and usually are run concurrent to each other, with the first count consecutive to the underlying offense.[2]

---

[2]    *See also United States v. Adigun*, Crim. Indict. No. 1:10-CR-202-RWS (N.D. Ga. 2010) at Doc. 1, 281, & 323 pp. 62 (lead defendant used position as mail carrier to steal personal identifiers and credit card information from mail route in order to obtain credit cards, bank accounts, loans, money orders, and other goods and services in the victims' names; convicted of fraud, bank fraud, production of fraudulent identification, and five counts of aggravated identity theft; with a guideline range of 70-87 months without the aggravated theft charges, sentenced after trial to a total term of 100 months); *United States v. Jarrious K. Moon*, Crim.

Such a result is particularly appropriate in the instant case. As noted above, Mr. Sonubi did not participate in the creation of the identity-related documents that are the basis for the aggravated identity theft charges in his case, other than by providing his photograph. He did not know how the information about the particular victims was obtained, and only received the identifications from the person that recruited him into the fraud. At his change of plea hearing, Mr. Sonubi pleaded guilty to the aggravated identity theft charges under a deliberate indifference theory, admitting that he should have figured out that the identity documents were related to real people because of the uses to which they were put, but lacked actual knowledge of the existence of the victims. Although still culpable for the offense, these circumstances also suggest that running only the first aggravated identity theft count consecutive to the bank fraud is appropriate in the instant case.

C.     The History and Characteristics of Mr. Sonubi Support a Sentence of Thirty-Six Months

1.  Attempted Cooperation

---

Indict. No. 1:06-CR-00175-BBM (N.D. Ga. 2006) at Doc. 181, 433 (defendant and others used false identification documents to open business accounts at Bank of America, deposit stolen checks, and make ATM and money order withdrawals to deplete funds; convicted after trial of bank fraud and five aggravated identity theft counts; sentenced to 46 months on bank fraud, 24 months consecutive for first aggravated identity theft count, remaining 1028A counts concurrent to first one).

As noted in the Presentence Report, Mr. Sonubi attempted to cooperate with law enforcement about the fraud. PSR at ¶¶ 50-51. He identified the individual that had recruited him and had directed his activities. *See id*. Mr. Sonubi made several telephone calls to that person, on his own and in the presence of the agent assigned to the case, suspecting that his recruiter was still receiving checks. *Id*. Mr. Sonubi offered to meet that person in locations where they had made exchanges before. *Id*.

Unfortunately, although he did call back on at least one occasion, Mr. Sonubi's recruiter delayed their conversations, gave excuses, and ultimately did not solidify plans for a meeting. *Id*. Likely by design, Mr. Sonubi's knowledge of the fraud was limited to his role and to the information provided to him by his recruiter, such that he could not provide agents with any additional leads, either as to the source of the checks or the creator(s) of the identity documents. *Id*.

Notably, although Mr. Sonubi was originally arrested on June 20, 2017 by Cobb County authorities, he did not enter federal custody until May, 3, 2018, and was not debriefed until November 19, 2018. *See id*. at ¶¶ 50, 80, p. 2 (Arrest Date & Release Status). Mr. Sonubi's recruiter was aware at least of the Cobb County arrest. *Id*. at 50. Given this fact, and the length of time Mr. Sonubi was in state custody, the recruiter was likely suspicious that Mr. Sonubi was working with law enforcement when he refused to meet with him. Because his attempted cooperation did not bear

fruit, Mr. Sonubi will not receive a government-sponsored departure for his cooperation. However, this Court may take into account Mr. Sonubi's efforts in assessing his character and willingness to move beyond his own personal accountability to assisting the government with its efforts to locate other culpable parties.

2. <u>Mr. Sonubi's Limited Criminal History Reflects a Low Risk of Recidivism</u>

Now fifty-two years of age, Mr. Sonubi has no criminal history points. *See* PSR at ¶ 74. The Pre-sentence Report calculates Mr. Sonubi's criminal history score as zero, and further notes that he has no juvenile adjudications; a single adult criminal conviction for reckless driving and failure to maintain lane; and no other offense behavior not part of relevant conduct. *See id*. at ¶¶ 72, 75-76. Mr. Sonubi does have a domestic violence incident relating to his former spouse (which was nolle prossed following completion of a diversion program) and a reckless driving citation from 2014, but for a defendant making his first appearance in federal court at the age of 52, this is limited criminal history. *See id*. at ¶¶ 73, 79. This "time to crime" factor has been the basis for a departure even under the mandatory guidelines regime. *See United States v. Ward*, 814 F. Supp. 23 (E.D. Va. 1993) (departure warranted because guidelines fail to consider length of time defendant refrains from commission of first crime, until age 49).

As the Sentencing Commission recently noted, a criminal history score of zero does not necessarily mean an offender had no prior criminal history. *See* U.S.S.C., "The Criminal History of Federal Offenders: Key Findings" (May 17, 2018) ("Almost one in ten offenders in fiscal year 2016 had a criminal history score of zero but had at least one prior conviction") (available at https://www.ussc.gov/research/research-reports/criminal-history-federal-offenders). But the Commission has also noted that its own recent recidivism study demonstrated that offenders with zero criminal history points have a lower recidivism rate than offenders with even just one criminal history point. *See* United States Sentencing Commission, "Amendments to the Sentencing Guidelines" at 73 (April 20, 2018) ("Alternatives to Incarceration for Nonviolent First Offenders") (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20180430_RF.pdf) (citing Tracey Kyckelhahn & Trishia Cooper, U.S.S.C., "The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders," at 6–9 (2017)). Other factors from Mr. Sonubi's personal life support the conclusion that he is unlikely to be a recidivist, and that this Court does not need to incarcerate him for a lengthy time for him to learn his lesson.

14

3. Mr. Sonubi's Life Has Been Characterized by a Devotion to Hard Work and to his Family

As the Supreme Court stated in *Koon*, "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). An understanding of Mr. Sonubi's history indicates that he is far from a hardened criminal. Rather, he is someone who has led an otherwise commendable and law-abiding life, but has allowed himself to make a serious mistake in judgment. He is deeply remorseful, and has repeatedly shared that he wishes that he could undo what he has done. His experience in the Cobb County jail, where he worked cleaning up after other inmates, was a very traumatic experience for him, and he lives in fear of being incarcerated and of being separated from his family again.

A three-year sentence is a significant punishment at his age and station in life, and one that is supported by the Section 3553(a) factors. As the National Institute of Justice has noted:

> [s]ending an individual convicted of a crime to prison isn't a very effective way to deter crime. Prisons are good for punishing criminals and keeping them off the street, but prison sentences (particularly long sentences) are unlikely to deter future crimes. Prisons actually may

have the opposite effect. Inmates learn more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment.

U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, "Five Things About Deterrence" at 1 (May 2016) (available at http://www.nij.gov/five-things/pages/deterrence.aspx).

Reflected in both the Presentence Report and in the letters that have been forwarded to the Court for consideration is the fact that Mr. Sonubi has always been a dedicated family person, both in his youth and adulthood. Mr. Sonubi was the eldest child of five children born to Taiwo and Modupe Okewo Sonubi in Lagos, Nigeria. PSR at ¶¶ 82-83. His father was a farmer, but died when Mr. Sonubi was only eight years old. *Id*. At this early age, he was required to assist in homemaking and childcare for his siblings, while also assisting his mother with the only means she had to provide for her family, trading. *Id*. The family was poor, but close, and Mr. Sonubi became a paternal figure to his younger siblings.

He moved to the United States in 2002, and eventually became a naturalized citizen in 2010. *Id*. at 84. He has always maintained employment, both as a dock supervisor at the Publix Supermarket Distribution Center in Dacula, and afterward as both a car salesman and a courier. *Id*. at ¶¶ 96-97. He has a bachelor's degree in

16

Computer Science from his studies in Lagos, and has pursued additional courses of study in that field since he has been in the United States. *See id*. at ¶¶ 93-95.

Since his arrest, he has continued to work as a courier, putting in long hours while still maintaining the strict conditions of his pretrial release, which has included location monitoring and a curfew. *Id*. at ¶ 97. According to the Probation Officer supervising Mr. Sonubi, he has been compliant with the terms of his release and has adjusted well to supervision. *Id*. at ¶ 6. He has no history of drug use or abuse, and only occasionally consumes alcohol socially. *Id*. at ¶ 92.

Mr. Sonubi has three young children who mean the world to him. *See id*. at ¶ 87. He is happily married; his wife Olubunmi is also a naturalized citizen who works as a hospice nurse. *Id*. His incarceration in the Cobb County jail after his arrest in the underlying state case was devastating to the family, and his involvement in the fraud came as a shock to Mr. Sonubi's wife and to others that know him. *Id*. at ¶ 88.

Mr. Sonubi is generally known as a dedicated father, husband, and hard worker at his church and in the other spheres of his life. Although his conviction in this case has caused him considerable shame and anxiety, these factors are strong indicators that Mr. Sonubi is a low risk for recidivism. Mr. Sonubi has already demonstrated that he can perform well while on supervision, and a period of

supervised release following his incarceration will ensure that Mr. Sonubi stays on the right track.

CONCLUSION

Through counsel, Mr. Sonubi respectfully requests a sentence of thirty-six months. This sentence will appropriately punish Mr. Sonubi for his conduct in the instant case, deter him from similar conduct in the future, and meet the other sentencing needs of Section 3553(a) of Title 18.   *See* 18 U.S.C. § 3553(a)(2).

Respectfully submitted, this 23rd day of May, 2019.

s/ *Richard B. Holcomb*
RICHARD B. HOLCOMB
GEORGIA STATE BAR NO. 360333
ATTORNEY FOR MR. ADEWALE O. SONUBI

Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303
Telephone:   404-688-7530
Facsimile:   404-688-0768
richard_holcomb@fd.org

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing SENTENCING MEMORANDUM was formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following Assistant United States Attorney of record:

> Tracia M. King
> Assistant United States Attorney
> 600 Richard B. Russell Building
> 75 Spring Street, S.W.
> Atlanta, Georgia 30303

Dated:   This 23rd day of May, 2019.

> s/ *Richard B. Holcomb*
> RICHARD B. HOLCOMB
> GEORGIA STATE BAR NO. 360333
> ATTORNEY FOR MR. ADEWALE O. SONUBI